UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALEXA RAMIREZ,<br><br>Defendant-Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent. | Case Nos.  1:22-cr-00220-BLW<br>          1:24-cv-00034-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Alexa Ramirez (Defendant) filed a Motion to Vacate Sentence under 28 U.S.C. § 2255, which is now fully briefed and ripe for adjudication. Civ. Dkt. 1; Crim Dkt. 43; Civ. Dkt. 4. The companion criminal case is Case No. 1:22-CR-00220-BLW (Case 220).

## INTRODUCTION

On April 25, 2020, paramedics responded to a medical emergency at an Idaho residence, where they found a deceased 19-year-old man (A.L.). The coroner determined A.L.'s death was caused by a fentanyl overdose. Months later, through a confidential informant, the fentanyl was traced to a sale made by then 18-year-old Defendant Alexa Ramirez, a friend of A.L.

**MEMORANDUM DECISIONAND ORDER - 1**

Defendant and her then-boyfriend Hayden Bosh, worked together to sell fentanyl pills disguised as oxycodone pills. Crim. Dkt. 39 at 5. Defendant advertised the pills for sale on social media, including reduced prices for larger quantities of the drugs. *Id*. at 6. In the apartment where Defendant and Bosh lived, investigators found a loaded handgun registered to Bosh, $1,386 in cash, drug paraphernalia, a drug ledger in Bosh's handwriting, and 60 fentanyl pills (worth approximately $2,400). *Id*. at 5; Crim. Dkt. 45 at 17.

Defendant continued to sell drugs after knowing the fentanyl had caused A.L.'s death. On May 4, 2020, she was charged by complaint for possession and delivery offenses occurring on May 3, 2020, in a state criminal action in the Fifth Judicial District Court in Twin Falls County, Idaho. *See* https://www.preview.icourt.idaho.gov/case/CR42-20-3943/county/Twin%20Falls (accessed 9/2/2025). Under a plea agreement in the state court action, she agreed to plead guilty to two counts, and two counts were dismissed. She was sentenced to a unified term of three years fixed with four years indeterminate, with incarceration deferred in favor of supervised probation with participation in Drug Court. *See id*.

On November 24, 2020, federal investigators interviewed Defendant after giving her Miranda warnings. Defendant admitted to selling the fentanyl pills to A.L. at a gas station a few hours before he overdosed.

**MEMORANDUM DECISIONAND ORDER - 2**

In January 2021, in the state criminal matter, she was charged with a probation violation for an unsuccessful discharge from Drug Court and for having unapproved associations with IDOC inmates at the Twin Falls County Jail. *See id*. She admitted the violations and her probation was revoked, but the state court retained jurisdiction to permit her to participate in a supervised release rider program. She was released from state custody on September 17, 2021, and remained free until her federal sentencing occurred on August 11, 2023. During that time, Defendant became engaged to be married and gave birth to a son in October 2022.

Although the drug sale that led to A.L.'s death occurred in April 2020, Defendant was not federally indicted until 2022. *See* Crim. Dkt. 1. A grand jury indicted Defendant for the crime of Distribution of Fentanyl in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C). Crim. Dkt. No. 1. This indictment included a death enhancement allegation that she caused serious bodily injury and death to A.L., which would have subjected her to a 20-year mandatory minimum prison sentence.

Defendant was appointed counsel, Courtney Peterson. In negotiations, the Government offered to file a superseding information that relieved Defendant of the 20-year mandatory minimum sentence in exchange for a stipulation to a higher offense level and open sentencing recommendations. *See* Crim. Dkt. 27. The written plea agreement stated that the Government could "recommend any sentence it chooses." *Id.* at 2. The parties agreed to a base offense level of 38 as an upward departure pursuant to 18 U.S.C. § 3553(b) for the aggravating fact of A.L.'s death. With the advice of Ms. Peterson,

MEMORANDUM DECISIONAND ORDER - 3

Defendant signed an amended plea agreement containing these terms on March 31, 2023. Crim. Dkt. 28.

Thereafter, the United States Probation Office (Probation) calculated the base offense level at 10 and recommended nine months of imprisonment. Crim. Dkts. 32, 33. The recommendation was based on Probation's construction of the facts—"while the defendant admitted to selling A.L. fentanyl, his (A.L.'s) death was not established in the offense of conviction." Crim. Dkt. 33 at 2. However, Probation noted that "5K2.1, Death; and 5K2.21, Dismissed and Uncharged Conduct" were "potential grounds for departure." Crim. Dkt. 30 at 12.

At the sentencing hearing on August 11, 2023, Ms. Peterson told the Court that the Defendant was pregnant with her second child. Crim. Dkt. 45 at 20. Ms. Peterson recommended a sentence similar to Probation's recommendation, while the Government recommended 168 months of incarceration. Crim. Dkt. 45.

The Court agreed that, while the recommendation of Probation was correctly calculated, it did not account for several important factors, including the death of A.L. and Defendant's continued drug sales after A.L.'s death. Therefore, a sentence of nine months of incarceration was not appropriate under the circumstances. The Government's lengthy sentence was rejected. Instead, the Court sentenced the Defendant to 60 months of prison. The Court concluded that a variance and a sentence significantly above the guidelines range was warranted to afford adequate deterrence and because "[a] death resulted from the conduct in the offense" and "[t]he parties agreed to a

MEMORANDUM DECISION AND ORDER - 4

substantially increased BOL [base offense level]." Dkt. 42, *Statement of Reasons*, ¶ VI.C. Defendant was remanded to the custody of the Bureau of Prisons and is serving her prison term at a Residential Reentry Management field office in Phoenix.

Defendant raises four ineffective assistance of trial counsel claims in her § 2255 motion. Based on the record and for the reasons set forth below, the Court will deny the motion.

### LAW AND PROCEDURES GOVERNING REVIEW OF § 2255 CLAIMS

The § 2255 motion must: "(1) specify all the grounds for relief available to the moving party" and "(2) state the facts supporting each ground." Rule 2(b), § 2255 Rules.

Under some circumstances, evidentiary development is unnecessary. A court must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), § 2255 Rules.

Where credibility of parties and witnesses can be "'conclusively decided on the basis of documentary testimony and evidence in the record,'" no "evidentiary hearing to receive testimony from the petitioner" is required. *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1989) (citing *Watts v. U.S.*, 841 F.2d 275, 277 (9th Cir. 1988)). "Rule 4(b) recognizes that summary dismissal of meritless motions under § 2255 is appropriate to relieve the district courts from the heavy burden which an obligation of hearings and findings on these motions would impose." *Abatino v. United States*, 750 F.2d 1442, 1444 (9th Cir. 1985).

1. **Standard of Law: Ineffective Assistance of Counsel**

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

**MEMORANDUM DECISIONAND ORDER - 6**

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

In evaluating an ineffective assistance of counsel claim, the court may consider either the performance or the prejudice component of S*trickland* first. *Id.* at 697. The Court need not consider one component if there is an insufficient showing of the other. *Id.*

## REVIEW OF CLAIMS

### 1. Claim 1: Failure to Argue that Defendant's Unborn Child would be Better Served in an Inmate Pregnancy Program

Defendant argues that, at sentencing, her lawyer failed to argue for her unborn child's health and welfare and should have argued that Defendant should be placed in the MINT (Mothers and Infants Nurturing Together) program. The MINT Program is a community-based program that promotes bonding and parenting skills for low-risk female inmates who are pregnant.

Ms. Peterson declares under oath that Defendant did not disclose her pregnancy to her until 30 minutes before sentence, and apparently had not disclosed it to her family members and friends. This is supported by the sentencing transcript, which shows that, after announcing that Defendant was pregnant, Ms. Peterson remarked, "That will come as a complete surprise to most in the gallery." Crim. Dkt. 45 at 20. When Ms. Peterson asked Defendant before the sentencing hearing whether she would like to request a

**MEMORANDUM DECISIONAND ORDER - 7**

continuance to give Ms. Peterson more time to develop the facts and an argument about how the pregnancy should be considered as a sentencing factor, Defendant declined. Defendant has not rebutted Ms. Peterson's declaration.

Regardless of the timing of the pregnancy disclosure to counsel, Defendant has not shown Ms. Peterson performed deficiently. Ms. Peterson *did* argue that Defendant's pregnancy should be considered by the Court in crafting the sentence. Crim. Dkt. 45 at 20. It was not Ms. Peterson's fault that she was not able to develop additional arguments addressing the pregnancy. Ms. Peterson's declaration shows that she could have researched the BOP's MINT policies had Defendant given her advance notice of this issue.

Nor has Defendant shown that the manner in which Ms. Peterson presented the pregnancy argument for consideration to the Court in sentencing caused Defendant prejudice. Instead of arguing for a more comfortable post-partum experience for Defendant and more natural-mother nurturing for the new child, Ms. Peterson instead argued that Defendant's second child would be an additional impetus for more of the positive change in her life that had already occurred between the indictment and sentencing. Dkt. 45 at 20. Asking for a better prison experience for Defendant would not have been a sound or successful strategy, where Ms. Peterson knew that the sentence must adequately account for Defendant's role in A.L.'s death.

The Court did not specifically address Defendant's second pregnancy in its reasoning, but its comments about Defendant's new family relationships equally applied

to the expected second child. The Court noted that, while awaiting sentencing, she entered into a relationship with her fiancé and gave birth to her first child, and that the child's father could take care of the child. The Court noted that Defendant *chose* to enter into relationships and conceive children *knowing* she was facing potential prison time. Crim. Dkt. 45 at 23. Nothing was presented showing the father could not take care of the second child.

The Court considered many weighty considerations in crafting a sentence, including both significant mitigation (age of the Defendant, subsequent rehabilitation efforts) and significant aggravation (a buyer's death resulting from drug abuse, continued dealing after causing a death). The Court determined that 60 months was the shortest sentence it could mete out that would have a deterrent effect, and, that, considering A.L.'s death, it was still inadequate. Crim. Dkt. 45 at 27. Defendant has not established "a reasonable probability that the result of the sentencing proceedings would have been different" had counsel argued for better prison conditions for Defendant and less risk to the health of her unborn child. *See Strickland*, 466 U.S. at 688-97.

Further, habeas corpus is a challenge to a sentence imposition or length. No prisoner has a constitutional right to be housed in a particular program or facility. That the Court did not recommend Defendant for the MINT program has nothing to do with the length of her sentence.

Similarly, in *United States v. Addonizio*, 442 U.S. 178, 185 (1979), the prisoner rested his claim on the fact that the trial court expressed its opinion at sentencing that he

**MEMORANDUM DECISIONAND ORDER - 9**

would be released on parole after serving one-third of his sentence based on exemplary institutional behavior, but the Parole Commission later changed its practices, causing him to be imprisoned for a longer term. The Supreme Court held that "the error did not affect the lawfulness of the judgment itself." *Id*. at 187. Mr. Addonizio failed to establish a fundamental defect: his sentence was less than the statutory maximum sentence prescribed by Congress, and there was "no claim that the action taken by the sentencing judge was unconstitutional, or was based on 'misinformation of constitutional magnitude.'" *Id*.; *see also Gibbs v. United States*, No. CIV 97-195-SLR, 1999 WL 360200, at *5 (D. Del. May 17, 1999) (holding that a petitioner's ineligibility for non-prison placement is an inappropriate ground for § 2255 relief).

Because Defendant has produced no facts supporting either the deficient performance prong or the prejudice prong of the *Strickland* ineffective assistance of counsel test, Claim 1 fails and is subject to summary dismissal.

### 2. Claim 2: Failure to Raise Government's Alleged Oral Fraudulent Inducement to Plead Guilty by Promising to Recommend a Sentence of One Year

Defendant asserts that Ms. Peterson failed to raise at sentencing the issue that the prosecutor orally promised that Defendant would receive only a one-year prison sentence. Defendant clearly has designated this an ineffective assistance of counsel claim, and, therefore, the Court declines to alternatively consider it as a stand-alone prosecutorial misconduct claim. Construed either way, this claim could not have been brought on direct

MEMORANDUM DECISION AND ORDER - 10

appeal because it requires extra-record development. Therefore, it is not procedurally defaulted, as the Government argues.

The Court finds that the record conclusively rebuts Defendant's contention. The Government refutes this argument. Ms. Peterson's Declaration does not support this argument. Ms. Peterson strategized that, because the indictment included a death enhancement, Defendant could have received a 20-year mandatory minimum sentence if convicted, the priority was to remove the death enhancement. Civ. Dkt. 4-2 at 2. Ms. Peterson negotiated terms that (1) the Government would agree to file a superseding information that removed the death enhancement; (2) the parties would stipulate to an upward departure under 2D1.1(a)(2) and a total offense level of 38; and (3) Defendant would agree to admit that the fentanyl she sold to A.L. killed him.[1]

Defendant's allegation that the Government would move all the way from a twenty-year mandatory sentence to a one-year sentence is simply implausible based on the fact that it had evidence, including a confession, that Defendant admitted her sale of fentanyl caused the death of A.L. Seldom in drug cases is there such a clear causal connection between a drug user's death and the drug dealer who illegally dispensed the drug, as here. The Government persuasively argues that, had the Government agreed to a one-year sentence, Defendant should have had some reaction, objection, or question at

---

[1] Ms. Peterson's Declaration says that the negotiated base offense level was 35, which appears to be a mere scrivener's error, because the entire record reflects a base offense level of 38, including the Court's identification of 38 in open court. Crim. Dkt. 45 at 5. Regardless, the numbers are close enough that 35 or 38 resulted in the same outcome, especially when either is compared to Probation's base offense level finding of 10. Crim. Dkt. 33 at 1. Both parties were free to argue for a guideline or lesser sentence. Crim. Dkt. 45 at 5.

**MEMORANDUM DECISIONAND ORDER - 11**

the sentencing hearing when the Court stated that the parties "effectively stipulated to … 168 to 210 months" three times, *see* Dkt. 45 at 5, 7; and the Government argued for 168 months, *id.* at 10. Because no facts in the record support this allegation, and the record facts strongly refute that any such promised occurred, Claim 2 is subject to dismissal.

3. **Claim 3: Counsel did not ensure that Defendant reviewed the PSR, and Defendant was prevented from filing sentencing materials**

Defendant asserts her counsel spent little time with her regarding the PSR and sentencing, and that she was not aware that Probation was recommending only six to nine months of probation.

Reviewing the entire record for deficient performance, the Court concludes there are no facts in the record to support this claim. Ms. Peterson declares under oath:

> I provided the PSR to Ms. Ramirez on May 31, 2023 and we reviewed it together on the same day. We met over zoom and had several telephone calls to prepare for sentencing. I encouraged Ms. Ramirez to have family and friends write letters on her behalf, but none were provided. She was given copies of the final sentencing recommendation, the Government's sentencing memorandum, and the motion for variance and sentencing memorandum that I filed on her behalf. We discussed sentencing argument strategies, and I gave her a copy of an article on allocution to help her prepare.

Civ. Dkt. 4-2 at 3. Defendant has not rebutted these declarations. Contrary to her allegations here, Defendant stated on the record at the sentencing hearing that she had reviewed the PSR. Crim. Dkt. 45 at 3.

Reviewing the deficient performance prong, the Court finds that Defendant has not shown that, even if she did not review the PSR and her family was prevented from

**MEMORANDUM DECISIONAND ORDER - 12**

sending letters to the Court in support of Defendant, these deficiencies would have affected the sentence of 60 months.

This claim seems to imply that, had Defendant known the Probation recommendation was only 6 to 9 months, she would not have entered into the plea agreement. However, this ignores the fact that the plea agreement saved her from the 20-year minimum mandatory term of imprisonment that would have been imposed had she proceeded to trial and a jury had found that her sale of drugs caused A.L.'s death (which she admitted).

Recognizing that the Court could not arrive at a sentence of less than 20 years for Defendant without the type of agreement the attorneys crafted, the Court stated at the sentencing hearing:

> Obviously, this case has at least two extreme considerations for me to take into account. On the one hand, this offense was extremely serious. I mean, you simply cannot say enough about that. Simply put, a young man died because Ms. Ramirez sold him fentanyl. On the other hand, Ms. Ramirez was very young, not quite 19, when she made that horrific choice, and she has made some big changes since then.
>
> What I really want to do, though, is to commend counsel for fashioning a plea agreement that I think appropriately tried to reflect these factors. I'm probably reading between the lines here more than what is explicit in the plea agreement, but my sense of what occurred is that both the government and the defense recognize that if they had charged the victim's death as part of the charged offense, which I think the original indictment did, that would have triggered the 20-year mandatory minimum sentence under 21 U.S. Code Section 841(b)(1)(C).

**MEMORANDUM DECISION AND ORDER - 13**

Crim. Dkt. 45 at 4.

Because of the death involved, the Court would never have adopted Probation's recommendation. Crim. Dkt. 45 at 7. No amount of supportive letters from Defendant's family and no letter showing Defendant's remorse and rehabilitation would have changed the Court's mind. A.L. deserved nothing less than Defendant's five-year sentence. Ms. Peterson was not deficient and no prejudice resulted. Claim 3 is subject to dismissal.

### 4. Claim 4: Counsel Failed to Interview Co-Defendant Hayden Bosh or Present Impeachment Evidence at Sentencing

Defendant argues that Ms. Peterson should have done more (1) to show that Co-Defendant Hayden Bosh owned the gun and kept the drug ledgers in his own handwriting, and (2) to emphasize that Bosh was abusive to Defendant. When the Court asked the prosecution to comment on the potential abusive relationship between Bosh and Defendant, the prosecutor pointed out that, in the end, it was Defendant, not Bosh, who had the conversations with A.L. and decided to sell the drugs to him, causing his death. Crim. Dkt. 45 at 12-13. Ms. Peterson did state that the gun and ledgers were Bosh's, that Bosh was controlling, that Bosh was the mastermind of the operation, and that Defendant was more like a courier-type participant. *Id*. at 17.

Ms. Peterson chose to emphasize the rehabilitative changes Defendant had made, which was a good strategy choice given that the prosecution presented much shocking and distasteful evidence, including that Defendant kept selling drugs after she knew she had caused A.L.'s death, that she boastfully had referred to herself as "Pablo Alexabar" after her arrest, that she asked an individual to post a picture of her in her jail garb raising

both middle fingers to show her disdain for ordered society and the law. *Id*. at 10-11, 14; Crim. Dkt. 39. Nothing about Defendant's co-defendant would have influenced the Court to arrive at a lesser sentence.

Defendant also argues that Ms. Peterson should have done more to investigate the informant. In response, Ms. Peterson has declared under oath:

> I was aware that Ms. Ramirez wanted to know the name of the informant in the case, but the issue became moot when she gave up the right to confront her accusers by pleading guilty. In my view, the name of the informant was not important to her defense due to the admissions she made on social media, recorded jail calls, and in her post-miranda statements to law enforcement. This was all discussed prior to the entry of plea.

Civ. Dkt. 4-2 at 2.

Under *Strickland*, strategic decisions "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

**MEMORANDUM DECISIONAND ORDER - 15**

*Id.* at 690-91. Ms. Peterson's decision to forgo investigating the informant and focus on removing the death enhancement was sound trial strategy, given the many ways Defendant had admitted to the facts supporting the drug sale and the death enhancement.

Even if Ms. Peterson performed deficiently for failing to investigate the informant, Defendant has not shown that any prejudice to her case resulted. The Government produced several recorded conversations between Defendant and Bosch showing that Defendant suspected the informant was a person they knew who was incarcerated ("Bitches turn bitches when they're in prison.") Crim. Dkt. 4 at 24. But Defendant provides nothing showing that the informant was unreliable or impeachable, or that having details about the informant would have made any difference either in negotiations or at trial.

And, even if the informant could have been impeached at trial, that would have affected the case minimally, given that Defendant had made too many admissions about her drug dealing, including brazen advertising on social media, and admissions about her involvement in A.L.'s death for the informant details.

Having rejected all grounds for Defendant's assertion that she is entitled to § 2255 relief on any of her claims, regardless of whether the Court has addressed each specific argument in this Order, the Court will deny relief.

**MEMORANDUM DECISIONAND ORDER - 16**

## ORDER

**IT IS ORDERED:**

1. Defendant Alexa Ramirez's Motion for § 2255 Relief (Crim. Dkt. 43; Civ. Dkt. 1) is DENIED.

2. A movant must obtain a certificate of appealability to pursue an appeal from a final order in a § 2255 habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Defendant has not made a substantial showing of the denial of a constitutional right; in fact, the record strongly refutes all of her claims. The Court declines to issue a certificate of appealability in this case.

3. Should Defendant desire to appeal, she may file a notice of appeal in this Court and seek a certificate of appealability in the Ninth Circuit Court of Appeals.



DATED: September 6, 2025

B. Lynn Winmill
U.S. District Court Judge